UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | INDICTMENT NO. |
| | ) | |
| v. | ) | 18 U.S.C. § 1349 |
| | ) | Conspiracy to Commit Wire Fraud |
| MAC-ANGELO FOBIZSHI | ) | |

**THE GRAND JURY CHARGES THAT:**     C R 1 2 5 - 0 4 1

At all times material to this Indictment:

## Background

### The COVID-19 Pandemic and the CARES Act

1.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 designed to provide emergency financial assistance to the millions who were suffering the economic effects caused by the COVID-19 pandemic. Among other relief efforts, the United States sought to provide financial support to eligible businesses that could be used to offset certain business expenses. The SBA was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The SBA's mission was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees. In addition, the SBA provided loans that came directly from the U.S. Government.

*Economic Injury Disaster Loans ("EIDL")*

2.    One source of relief provided by the CARES Act was the authorization for the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.  In order to obtain an EIDL, a qualifying business had to submit an online application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the twelve-month period preceding the disaster, and the cost of goods the business sold in the twelve-month period preceding the disaster.  In the case of EIDLs, the twelve-month period was that preceding January 31, 2020.  The applicant also had to certify that all the information in its application was true and correct to the best of the applicant's knowledge.  EIDL applications were submitted directly to the SBA online at https://covid19relief.sba.gov/#/ and processed by the agency with support from a government contractor, Rapid Finance.  The amount of each loan was determined based, in part, on the information provided by the application about employment, revenue, and cost of goods, as described above.  Any funds issued under an EIDL were issued directly by the SBA.  EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments—collectively referred to as "operating expenses" in this application.

3.    For loan applications prior to April 6, 2021, EIDL loans were intended to cover six months of gross margin, less any original advances and other compensation.  Thus, the intended loss was calculated as gross revenues ("GR")

2

submitted for the twelve months prior to the disaster minus cost of goods sold ("COGS") submitted for the twelve months prior to the disaster divided by two less the original advance and compensation from other sources. If any of the calculations were above $150,000 after deducting the original advance and compensation from other sources, the amount was limited to $150,000 (loan cap at the time).[1]

## COUNT ONE
*Conspiracy to Commit Wire Fraud*
18 U.S.C. § 1349

4.      The allegations of paragraphs 1 through 3 of this Indictment are hereby realleged and incorporated as if fully set forth herein.

5.      Beginning at least as early as April 2020, and continuing to in or about October 2020, within the Southern District of Georgia and elsewhere, the defendant,

**MAC-ANGELO FOBIZSHI,**

knowingly and willfully conspired and agreed with other persons, both known and unknown to the grand jury, to commit wire fraud, that is, having devised or intended to devise a scheme or artifice to defraud, or to obtain money and property by means of false or fraudulent pretenses, representations, or promises, transmitting or causing to be transmitted by wire communication in interstate or foreign commerce any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, in violation of 18 U.S.C. § 1343. All of this was done in violation of 18 U.S.C. § 1349.

---

[1] NOTE: Only the original EIDL advances are deducted from eligibility because it is a duplication of benefits. The targeted EIDL advance and the supplemental targeted EIDL advances are not a duplication of benefits and are not deducted from eligibility.

3

## Object of the Conspiracy

6.    It was the object of the conspiracy for the Defendant and others to unlawfully enrich themselves by, among other things, obtaining EIDL proceeds under false and fraudulent pretenses.

## Manner and Means of the Conspiracy

7.    It was part of the conspiracy that the Defendant and his co-conspirators submitted, or caused to be submitted, multiple false and fraudulent applications for EIDLs from the SBA at https://covid19relief.sba.gov/#/, knowing the same to contain material false representations regarding each purported business's gross revenues, cost of goods sold, and number of employees.

8.    It was further part of the conspiracy that many of these applications contained the same false gross revenue number, the same false "cost of goods sold" number, and the same false number of employees.

9.    It was further part of the conspiracy that in reliance on the false representations made in EIDL applications submitted by the Defendant and his co-conspirators, the SBA, by means of interstate wire communication, disbursed at least $1,500,000 into various bank accounts.

10.    It was further part of the conspiracy that Defendant received a kickback from the proceeds of each loan application that he submitted—or directed a coconspirator to submit—that was approved.

## Overt Acts

11.    In furtherance of the conspiracy and to effect the objects of the

4

conspiracy, the following overt act, among others, was committed in the Southern District of Georgia and elsewhere:

a.      On or about July 7, 2020, **MAC-ANGELO FOBIZSHI** submitted an electronic EIDL application for a purported business called "Pre2," fraudulently representing that the business had $3,500,000 in gross revenues, $2,300,000 in cost of goods sold, and 15 employees. "Pre2" was purportedly owned by **INDIVIDUAL 1**, residing in Richmond County, Georgia, and the business was purportedly located in Richmond County, Georgia.

b.      On or about July 7, 2020, **MAC-ANGELO FOBIZSHI** submitted an electronic EIDL application for a purported business called "Jacqui T Apparel and Accessories LLC," fraudulently representing that the business had $3,500,000 in gross revenues, $2,300,000 in cost of goods sold, and 15 employees. "Jacqui T Apparel and Accessories LLC" was purportedly owned by **INDIVIDUAL 2**, residing in Richmond County, Georgia, and the business was purportedly located in Miami, Florida.

c.      On or about July 23, 2020, **RAYNEISHA GOOLSBY** submitted an electronic EIDL application for a purported business called "Positive Boys Positive Men," fraudulently representing that the business had $3,500,000 in gross revenues, $2,300,000 in cost of goods sold, and 15 employees. "Positive Boys Positive Men" was purportedly owned by **INDIVIDUAL 3**, residing in Columbia County, Georgia, and the business was purportedly located in Columbia County, Georgia. **INDIVIDUAL 3** spoke with **GOOLSBY** about

this EIDL application, and caused it to be submitted, from the Southern District of Georgia.

All done in violation of Title 18, United States Code, Section 1349.

## **FORFEITURE ALLEGATIONS**

The allegations contained in Count One of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

Upon conviction of the Title 18 offense set forth in Count One of this Indictment, the Defendant, **MAC-ANGELO FOBIZSHI**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to the charged offense.

If any of the property described above, as a result of any act or omission of the Defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property that cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

A True Bill.

Foreperson

_____
Tara M. Lyons
Acting United States Attorney

Jennifer S. Thompson
Assistant United States Attorney
*Lead Counsel

_____
Tania D. Groover
Assistant United States Attorney
Chief, Criminal Division

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) INDICTMENT NO. |
| | ) |
| v. | ) 18 U.S.C. § 1349 |
| | ) Conspiracy to Commit Wire Fraud |
| MAC-ANGELO FOBIZSHI | ) |

**CR125-041**

## PENALTY CERTIFICATION

The undersigned Assistant United States Attorney hereby certifies that the maximum penalties for the offense charged in the Indictment are as follows:

Count 1:    Conspiracy to Commit Wire Fraud
18 U.S.C. § 1349
- Not more than thirty (30) years of imprisonment
- Not more than a $1,000,000 fine
- Not more than five (5) years of supervised release
- $100 special assessment

Respectfully submitted,

TARA M. LYONS
ACTING UNITED STATES ATTORNEY

*/s/ Jennifer S. Thompson*

Jennifer S. Thompson
Assistant United States Attorney
Alabama Bar No. 8400E77T